Good morning, honors. May the police court, my name is Jiqian Li, and I represent the petitioner. In this case, you may want to step closer to the mics. In this case, the immigration judge denied petitioner's application for asylum, primarily based upon her adverse credibility determination. In adopting the immigration judge's adverse credibility determination, the BIA offered four reasons. These four reasons, either individually or in combination, would not suffice to support an adverse credibility determination under this court's pre-real ID substantial evidence standard. First, the immigration judge found it to be a significant omission for petitioner not testify to a November evening raid conducted by public security authorities on a religious meeting. And the petitioner did describe the incident in detail in his asylum application, but he did not testify to that incident at his hearing. But as petitioner contended before the BIA, the reason he did not testify to that specific incident was because he was not asked to do so. Even the BIA acknowledged in its own decision that the immigration judge should have pointed out this omission to petitioner and given him an opportunity to explain. So instead of sending this case back to the immigration judge for her to correct her mistake, the BIA put the blame on petitioner for not offering an explanation to the BIA on his appeal. Mr. Lai, Mr. Li, because time is short, maybe you can focus. There are several inconsistencies that the IJ focused on. And perhaps you could focus on the one that I think is, to me at least, is the most difficult, is the one involving the wife's Catholic affiliation. Now my colleagues may feel differently, but that's the one that gave me the most trouble. So maybe you could talk about that. I think if we look at a record, the petitioner in his asylum application did not indicate either way whether the wife is a Catholic or is not. But he did testify that the wife was a Catholic member and she was attending regular religious activities. So when he was asked to explain this discrepancy, actually I don't see any discrepancy in the record. But when he was asked to explain why he did not mention that his wife was a Catholic, he said, I thought, that his wife worried about him for being Catholic. Yes, sir. And I guess if I understand the IJ's reasoning, what she was saying is, well, why would she be worried about him rather than worried about them? If she's a Catholic as well, she should worry equally about both of them. Sure, yeah. The implication is, as I think the IJ thought, is that if she worries about him and not herself, that means that she's not a Catholic. I think that's what it is. But I think the petitioner offered a reasonable explanation at the hearing when he was confronted with this concern. And he explained that because the asylum was about myself, so therefore, I was just focusing on what happened to myself personally. I think that the IJ, as well as the BIA, missed a point here. When you're comparing petitioner's asylum application with his testimony, you should have looked at the asylum application as a whole. Admitted in the record is the wife's letter. And in that letter, I think I will just read it out. That's page 281 in the administration record. The wife wrote, last night, the wife wrote to the petitioner, last night, someone called to threaten me to die if I, as a Catholic, continue to do mass every week. So that clearly indicates the wife was a member of that church. So that's part of the asylum application. So the immigration judge, while focusing on petitioner's asylum statement, did not pay any attention to any cooperative document admitted into the record. I think the immigration judge, as well as the BIA, should look at the petitioner's asylum application as a whole, not just a- Before you go to the whole, the incident that's troubling to me is that he did not mention in his application the knife. That was a pretty dramatic incident. He even had a scar. I guess he showed it to the immigration judge. Did he not? Yes, Your Honor. As he explained, he just generalized his mistreatment as torture. So as I read- His written application had a fair amount of detail in it. Why wouldn't- why isn't the immigration judge justified in thinking with these other issues that the immigration judge and the BIA relied on? Why isn't that omission of that- it's a very dramatic thing. He's got a scar even from it. I understand, Your Honor. But the BIA offered four reasons. So if the court believes the other three reasons are not reasonable or not proper, and then I think the court is left to guessing as to whether or not the BIA would have reached the same- exactly the same amount- exactly the same conclusion if that's the only concern that the BIA had. In that- before the REAL ID Act, Your Honor, I think the court looked at the substantial evidence standard. Under the substantial evidence standard that the petitioner- when the court considers whether or not omission or inconsistency to be significant, the court looked at the test is whether or not the petitioner has something to gain from changing his story. In this case, Your Honor, the petitioner has a scar to show, and he has nothing to gain from changing his story from being poked by a stick or by a knife. I believe this- if the court is left with this only one concern, I think the court should at least send it back to the BIA to see if the BIA would still adopt the immigration judge's adverse credibility determination just based upon this single reason. Well, it's a single reason, but it, in some ways, is the one that goes really to the heart of his application. If I remember from the record, this is the only instance in which he said that he was in any way physically abused by the authorities, right? Yes, sir. But let's- as I argue in my brief, that's just a detail that the petitioner provided at the hearing as to how he was tortured, as he referred to in his asylum application. Where in his asylum application does he say that he was tortured? Oh, yes, sir. I couldn't find that. Oh, yeah, I knew that question was coming. That's page 415. And on the question to- Which number? Yeah, have you- his answer to the question, have you or your family- Which number question? That's- A? A, yeah, or have you or your- or anyone in your family ever experienced harm or mistreatment or threats in the past by anyone? And the petitioner wrote, yes, I was tortured by the Public Security Bureau. They slapped, punched, and beat me because I am a Catholic. So by saying that he was- With a knife. He didn't describe in detail the use of a knife. But beat me could be- beat me with a knife or- and also your- because the application was prepared by someone who is not attorney, we- so we should have give petitioner some leeway in the imperfection in the preparation of his asylum application. As I said, your- I noticed my time is running out. Okay, thank you. We'll hear from government. Thank you. Are you able to see government counsel? Yes, can you see me? Mr- the monitor is on. Okay. We can see you fine. You may proceed. May it please the court, my name is Christina Martina. I'm here on behalf of the U.S. Attorney General. In this case, the board reasonably denied the petitioner's request for asylum and withholding of removal based on his lack of credibility. To go ahead and address the concerns that you've already voiced concerning the four reasons the board affirmed for this adverse credibility determination. Your Honor mentioned the omission from his asylum declaration regarding his wife's religion. He not only asserted in his testimony that she was Catholic, but also that she had participated in religious meetings, that she'd been harassed by authorities, and that she lost her job because of her religion. In his declaration, which you noted was quite detailed, he does mention her, her concern for him and his religious activities, but does not once mention her religion. Regarding the- his mentioning in his testimony- What about his explanation for that? His explanation for not mentioning? Yeah, I mean, the I.J. doesn't take account of the explanation at all. Just- I mean, he says I- I mean, the petition was prepared by a- I'm- we're told by a non-lawyer, and he said focused on him, and then when he gets on the stand, he tells the full story. Is that inconsistency? Is that just addition of additional details? Well, Your Honor, regarding the- the two- he actually submitted two asylum applications. One was in 2005, one was in 2008, and in 2008, he had the opportunity to submit a new declaration and change it if he so- if he desired, but he didn't do so, and he used the declaration that was submitted with his 2005 application. So he- and he was- in his- in 2008, he was represented by counsel, and I- I believe that the immigration judge did address this- she found that the- I'm sorry, he found that the explanation lacked clarity, the explanation that he just thought that the application was about himself, and that's why he didn't mention his wife's religion. Where does the- counsel, where does the- either the IJ or the BIA- this- explain why this goes to the heart of his claim? Let's see, the immigration judge- let's see, talks about this- I'm sorry, the board talks about it on page 3. The immigration judge discusses this- Well, let's- let's go to the BIA. Where does it say it? Okay, on page 3, it was in the second paragraph on page 3, just at the beginning of that paragraph. Conversely? The one that starts conversely? Okay. Yes, your honor. And basically, I mean, that's what he- I think the point that the board is trying to make is, look, you've talked about all these things that have happened to you, and in your testimony you said that your wife was attending religious services at the same time that you began attending religious services, and yet there's nothing regarding what might have happened to her. Now, Mr. Lee did mention a letter that the wife submitted, that she sent and that the petitioner submitted. However, this letter was not admitted into evidence because it was received either that same day of the individual hearing or the day before, and according to the practice manual, the default is 15 days prior- the corroborating evidence is required to be submitted 15 days prior to the hearing. So it actually wasn't admitted into evidence, and that's why it's not discussed. I'm sorry, can you take me back to the BIA opinion? I'm still trying to find that. Sure, I'm sorry. So it's just that second paragraph on page 3? It's page 2 of the BIA opinion, it's page 3 of the excerpts. I'm sorry, it's page 3 of the record, right, page 2 of the BIA opinion. I'm not excerpts, the record, but it's page 2 of the BIA opinion. It's the page that has the footnote 1 at the bottom. Got it, that works. It's right, the paragraph right above the footnote. Just scroll down a little bit, scroll down just a little bit. It says conversely, the paragraph says conversely. Yeah, I got it. And I believe the counsel is referring to the first four or five lines of that paragraph. Yes. I'm just trying to make sure you're focusing on the same lines. And then I still haven't heard an answer to Judge Fisher's question, which he asked as to where the BIA or the IG explains why this goes to the heart of this claim. Yeah, that's what I was looking for, because he did say one of the others went to the heart of the claim, but why isn't this simply a collateral matter if the whole notion of this is why he wants to be granted asylum because of his religion? They haven't explained why it goes to the heart of the claim, because he didn't mention his wife's religion. Well, on the previous page, on the first page of the board decision, it does generally say that all of these discrepancies we're going to discuss are separate. I understand they make a conclusion. They say it later on, too, but they don't say why. Why is it the heart of the claim? I think the board is trying to get at, because he is Catholic, and because he's testifying, he's embellishing his claim with her being Catholic as well, that the execution claim, that it does go to the heart of this claim. I'm afraid the board, you're right, the board doesn't specifically address it. All the board says is that it strongly implies, I'm sorry, that the declaration strongly implied that she was not Catholic. I mean, the knife incident is much more obviously goes to the heart of the claim, because it actually deals with something that happened to him. So maybe they don't have to be quite as clear about that, but this strikes me as somewhat marginal as to whether this goes to the heart of this claim, and you'd expect the board or the IJ to explain, you know, here's the reasoning, here's why I think it goes to the heart of the claim. You know, you've given an explanation, and I guess, but don't our cases from that era require an explanation from the decision maker, focusing specifically on why this item that's in inconsistency goes to the heart of the claim? Can we read into it? Can we rely on counsel's conjecture? Yes, I believe you can read into it, yeah. It's true that, yes, the board needs to explain why it goes to the heart of the claim. I think that the board thought it was doing that when it was talked to generally about how these four discrepancies are all central to his claim. I believe it was just because... All I, you know, the BIA says they go to the heart of the claim, but they cite page five of the IJ, who simply says that he hasn't been credible in his oral testimony and his written application. We're not consistent in issues that went to the heart of the claim, so that's a conclusion. That's the extent of the IJ's statement about it, and the BIA just cites that. That's not an explanation. And there is, in our case law, there is jurisprudence that says that he's not given the opportunity to explain why he didn't mention something in case of the first incident where the kid was drowned and all of that. And then there's no explanation of why the religion of his wife went to the heart of his claim. I'm having trouble with the grounds that have been put together here to find essentially overall that he basically was lying. Well, I'm looking at the judge's decision right now, page seven, page 76 of the record, and you're correct, Your Honor, it's not absolutely clear that the judge doesn't explicitly say this is why this goes to the heart of the claim. She did find that it was central to his claim, but getting to your concerns about the first omission, the raid in the woods and how he, before the IJ it wasn't mentioned that he had, it was his declaration, but it wasn't, he didn't mention it in his testimony. It's true the board even mentioned that, look, we know that the immigration judge should have brought this up, or it should have been brought up during testimony, should have been given the opportunity to explain, but essentially he hasn't shown us that he is prejudiced by the use of this omission for this adverse credibility determination. Really what notice and opportunity are about are that the proceedings be fundamentally fair, the immigrations be fundamentally fair. And since he hasn't explained it and he had the opportunity after the IJ decision that said, okay, I'm going to use this against you in the adverse credibility determination. You don't mention it in your brief. You don't give any explanation. And he still hasn't given an explanation in his opening brief about this. So I think what the board is trying to get at in that footnote on page two, or page three, the page two of the board decision, is basically saying, look, he hasn't shown us that he's been prejudiced by our use of this omission, which is, it's a big event. This is a major event. Someone drowned during this event. That he was injured, but yet, so it's understandable the board would find it hard for him to forget that it would be hard a thing to forget and hard a thing not to mention during his testimony. Also, there was a cash-off question. It's not, strictly speaking, an inconsistency, right? It's an omission. It's no mission, Your Honor. It's an omission. It's not, I'm sorry, it's not a contradiction, I'm sorry. Whether it's inconsistency or not is more or less a legal conclusion. It's not a contradiction, it's an omission. He leaves something out that we think he should have, or one would reasonably think he should have included. And what kind of, I mean, let's grant you that for purposes of, you know, argument. What do you, what do you make of that? What does one make of it is the idea that he then, we can infer that he embellished it during his testimony, that it must not be true, and therefore, I mean, he did show a scar, right? I'm sorry, that's about the knife, Your Honor. This, the one I'm referring to now is about the raid by the police when he and his church members were in the woods. Okay, I'm sorry, I thought the knifing happened then, but maybe I got my incidents confused. He actually had an opportunity about the knife. He was questioned about that. Okay, so let's, we can talk about either. I'm just wondering what exactly, when there's an omission rather than a contradiction. If it's a contradiction, you say, look, you said something today, you said something else yesterday, you must have been, you know, you were either really confused or lying, there must be, you know, you have a contradiction. But there's no contradiction between leaving, in leaving something out and then adding it later. At most, you can say, well, it's so important that the reasonable person was included the first time. Is that the chain of reasoning? Well, I think for this first omission, the raid in the woods, I think there's an answer to case law that talks about how, look, in your asylum... Let's talk about the knife. Let's apply it to the knife incident, because the same sort of reasoning applies to the knife incident. Okay, I'm sorry. So, he leaves it out. Let's say he, I mean, he does leave it out, but then he comes to the court, testifies. I thought he showed a scar, right? Didn't he show a scar? He tried to. Okay, so what do you make of that? You know, so he has a scar, he shows it, he testifies about it, he doesn't mention it in the application. So what does one make of that? He has a scar from something else and decided to capitalize on it? He stabbed himself in anticipation of the hearing? I mean, what do you, what does one, what do you infer from that? I think what the board was getting at here is that he, it's fine that, you know, in some application or declaration be general, and then you expand on that in your testimony, but he, in his declaration, it was extremely detailed. He talked about, as Mr. Lee was discussing, he talked about the implements that were used to beat him during detention. He talked about being tied up. He did not once mention a knife. And because, I think, in general, the asylum application is thought to be more general when there is details there, but there was something that he repeated. You're making the same argument, but you're not getting to the, and therefore, and therefore, what influence do you draw on that? He's lying on the stand? I mean, how does he get the scar? I mean, and therefore, what happens? What is the influence one draws? I mean, you're making these suggestive statements, you know, so, and therefore, he's lying about it. I mean, is that what it is? And therefore, it's reasonable that the board would find that it's to find him not credible because of this. Did he actually say he was cut with a knife? He did say during his testimony that he was cut with a knife, that he bled, and that he had a scar. And he showed the scar? Yes. Okay. No. There's also one more. I think we're out of time. I'm sorry, Your Honor. Thank you. We're about five minutes. If you, sorry about that. If Your Honors don't have any further questions, just ask that you deny the petition for review because the substantial record evidence shows it supports the adverse credibility determination in this case. Okay, thank you. Thank you. Mr. Lieb, would you like a minute for rebuttal? Yes, sir. I just want to address the issue raised by Judge Fischer. Come a little closer to the microphone, please. I'm sorry. Petitioner did not say in definite terms that he was cut with a knife. The knife first came up, the subject of knife first came up on page 103. And this is what the transcript reflects. So what line on page 103? Okay, let's, the middle, and then did you see the answer? They used, how did they beat you? The answer, they used a baton to beat me. And one of them was even using a knife. So he never indicated that he was cut with a knife. And then, but then petitioner's own attorney, the prior attorney said, where did they cut you? But actually petitioner did not offer an answer to that question. But then the interpreter was explaining to the judge, the respondent, the petitioner was saying something with an accent. So I think that there might be something that lost in the translation. He was not, the knife was used maybe to threaten him, but the scar could be a result of a poking by the baton, which was specifically referred to in his assignment application. Well, on the next page, though, on AR 104, he does return to the subject of the knife. And on line 10, he's asked, and you indicated earlier that one of the people who beat you had a knife. And he says, yes, one of them just kept telling me, saying, if you don't say I'm going to, then just poking it on my arm so I have this scar. Yeah, poking it with what? He didn't indicate. Talking about the knife. Yeah, yes, if you read it in the context, that's correct. But as I pointed out, there might be something lost in the translation because the record clearly indicates that the petitioner speak Mandarin with a strong accent. Look at the next question and answer. Which one are you referring to? Line 15, question, can you show the court where you were cut with a knife? Answer, they did this in a detention place. Question, okay, did you have stitches? Answer, no, just, it was just bleeding a lot. The man goes, did you break any bones? No, luckily, no. I agree with you. I think it's hard to say he wasn't claiming that he was cut with a knife. But he never, if you look at his answer, he never put the knife with the scar in one complete sentence. Come on, counsel, one of them kept telling me, saying, if you don't say I am going to, then just poking it on my arm so I have this scar. Can you show the court where you were cut with the knife? And he shows him the scar. Now, where is the scar? On his arm? It's pretty hard to fault the board and the IJ from thinking that he was tying the knife, being poked in the arm, if that's where the scar was. As the chief judge mentioned, this is just omission. The judge never denied in his application that he was not cut with a knife. So he just merely added an additional detail to all the abuses or mistreatments that he received during detention. So that does not necessarily show that he's lying. He's just merely providing some detail in response to specific questions asked of him. Okay, thank you. Thank you, Your Honor. The case is argued and submitted.
judges: Kozinski, Fisher, Watford